IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-21026

Summary Calendar

_____


VERA L SCHOPPE,

                              Plaintiff-Appellant,

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE; JAMES A COLLINS,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-93-CV-3561)
_____
August 4, 1997
Before KING, JOLLY, and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Vera L. Schoppe brought claims against the Texas Department

of Criminal Justice ("TDCJ") and James A. Collins for gender

discrimination under 42 U.S.C. § 1983 and the Texas Commission on

Human Rights Act ("TCHRA").  Schoppe appeals the district court's

---

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

grant of summary judgment in favor of TDCJ and Collins.  We affirm.

## I.   FACTS AND PROCEDURAL HISTORY

Schoppe became employed as the Assistant Mental Health Director at the TDCJ's Clements Unit located in Amarillo, Texas in March of 1990.  In October 1991, Twilia Cook and Bernice Batchelor filed internal grievances against Schoppe alleging, inter alia, sexual and racial harassment.  On October 8, 1991, Warden R. D. McLeod requested that the TDCJ Labor Relations/Equal Employment Opportunity ("EEO") office investigate the allegations.

As to sexual harassment, the investigation concluded 1) that Schoppe had engaged in conversations with various staff members about the alleged sexual misconduct of employees including Cook and Batchelor, 2) that Schoppe compounded this  inappropriate behavior by asking co-workers to watch Cook and Batchelor specifically for the sexual misconduct, and 3) that Schoppe's conduct created an intimidating hostile environment for Cook and Batchelor.  Based on these conclusions, the EEO investigation sustained the allegation of sexual harassment.

As to racial harassment, the investigator found that Schoppe made inappropriate racially-oriented comments on three separate occasions.  While the investigator concluded that Schoppe had not intended the comments to be offensive, the investigation found

2

that the comments were offensive and thus constituted racial harassment.

Finally, during the course of investigating Cook and Batchelor's allegations of sexual and racial harassment, the investigator found that Schoppe's conversations concerning Ruth Kendrick's emotional state following an attempted rape and Cook's possible bulimia were unwelcome. Therefore, the investigation concluded that harassment based on a perceived disability had also occurred. Schoppe was in a supervisory position over each of these employees at the time the harassing conduct occurred.

On January 2, 1992, McLeod conducted a disciplinary hearing following the investigation and recommended that Schoppe be terminated. In acknowledging that termination exceeded the established TDCJ disciplinary guidelines for Schoppe's work-rule violation, he concluded that this action was justified, among other reasons, because of her supervisory position at TDCJ and over the employees complaining of harassment. On January 31, 1992, Schoppe was terminated. Pursuant to TDCJ's grievance procedures, in March 1992, Schoppe appealed her termination to Collins, but the record does not show that any further action was taken. Her position was subsequently filled by two females -- Rena Looney in June of 1992 and Vian Weller in January of 1993.

Schoppe claims that her termination was based on gender discrimination. She contends that "TDCJ employs a double standard of discipline in cases of alleged harassment,

3

disciplining women more harshly than men in such cases, for no reason other than their gender and apparent stereotypical notions of 'appropriate' conduct for women."  In support of her claims, Schoppe asserts that her termination was not carried out consistent with TDCJ's disciplinary policies and brings forth evidence that she was treated more harshly than three male employees in similar circumstances.  Schoppe further alleges that the stated reasons for her termination are pretextual.  In support of this claim, she contends that there is evidence which calls into direct question the fact that she harassed anyone, that TDCJ deviated from its rules of discipline and hearing procedures in reaching the decision to terminate her, and that there is evidence of differential treatment of other employees who were found to have engaged in harassment.

TDCJ and Collins contend that Schoppe was terminated for violating the TDCJ policy prohibiting harassment.  Further, they assert that the discipline given Schoppe was permitted within TDCJ's disciplinary policies.

On July 1, 1993, Schoppe filed suit in federal district court claiming gender discrimination in her termination from TDCJ in violation of both the TCHRA, TEX. LAB. CODE ANN. §§ 21.001–.306 (Vernon 1996), and her right to equal protection under the United States Constitution pursuant to 42 U.S.C. § 1983.

On June 11, 1996, the trial court granted summary judgment in favor of TDCJ and Collins as to each of Schoppe's claims.

4

Schoppe then filed a motion for a new trial claiming she was entitled to a new trial on her claims under § 1983 for the deprivation of her federal constitutional rights. On October 4, 1996, the court entered its Amended Memorandum on Summary Judgment and Order Denying Motion for New Trial. The district court concluded that Schoppe had failed to demonstrate any discriminary motive for her termination and that she had not shown that she had been treated differently by TDCJ because of gender. As a result, she was unable to establish a claim under either the TCHRA or § 1983. Additionally, the district court found that because the Eleventh Amendment bars a suit for damages against a state in federal court, the claims against Collins in his official capacity must be dismissed.[1] Schoppe timely appealed.

## II.   STANDARD OF REVIEW

In reviewing the district court's grant of summary judgment, the appellate court reviews the issues de novo, applying the same criteria used by the district court in initially evaluating the motion. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1]Because we affirm the district court's dismissal of Schoppe's § 1983 claims against Collins on other grounds, we do not discuss Schoppe's assertion that the district court erred in concluding that the Eleventh Amendment barred her § 1983 claims against Collins seeking injunctive and declaratory relief.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The evidence and inferences to be drawn therefrom are reviewed in the light most favorable to the nonmoving party. FDIC v. Dawson, 4 F.3d 1303, 1306 (5th Cir. 1993), cert. denied, 512 U.S. 1205 (1994). Summary judgment is not appropriate if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

### A. TCHRA Claim

The TCHRA states that "an employer commits an unlawful employment practice if because of . . . sex . . . the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE ANN. § 21.051 (Vernon 1996). The purpose of the TCHRA is "to provide for the execution of the policies of Title VII of the

6

Civil Rights Act of 1964, and its subsequent amendments."  Id.
§ 21.001.  Title VII of the Civil Rights Act of 1964 also
prohibits an employer from discharging an employee based on the
employee's sex.  42 U.S.C. § 2000e-2.  In analyzing a claim under
the TCHRA, courts use the same analysis as that provided for
Title VII claims.  Deaver v. Texas Commerce Bank N.A., 886 F.
Supp. 578, 585 (E.D. Tex. 1995), aff'd, 79 F.3d 1143 (5th Cir.
1996).

The Supreme Court developed the framework for Title VII
discrimination claims in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973).  First, the plaintiff must establish a prima
facie case of discrimination.  Id. at 802.  Next, the burden of
production shifts to the employer "to articulate some legitimate,
nondiscriminatory reason for the employee's rejection."  Id.
The plaintiff then is given the opportunity to show the
employer's stated reason was pretext.  Id. at 804.

The analysis for summary judgment in employment
discrimination cases is provided in Rhodes v. Guiberson Oil
Tools, 75 F.3d 989 (5th Cir. 1996)(en banc).

> [A] plaintiff can avoid summary judgment . . . if the
> evidence taken as a whole (1) creates a fact issue as
> to whether each of the employer's stated reasons was
> what actually motivated the employer and (2) creates a
> reasonable inference that [the employee's protected
> status] was a determinative factor in the actions of
> which plaintiff complains.

7

Id. at 994. "Rhodes makes clear that a plaintiff must present evidence sufficient to create a reasonable inference of discriminatory intent in order to avoid summary judgment." LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 450 (5th Cir. 1996).

In a work-rule violation case such as this, Schoppe can establish a prima facie case by showing "either that [s]he did not violate the rule or that if [s]he did, [male] employees who engaged in similar acts were not punished similarly." Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir.), cert. denied, 449 U.S. 879 (1980). In order to uphold a claim of disparate treatment as compared to male employees, Schoppe's burden is to show "that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained." Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990).

Schoppe's theory on the prima facie case is that she was treated more harshly than several men who she alleged engaged in similar conduct because TDCJ deviated from disciplinary guidelines and terminated her while giving less severe punishment to the men. The evidence she brings forth to support this is also what Schoppe uses to support her burden on pretext to show that her gender was a determinative factor in her termination.[2]

---

[2]Schoppe also argues that in relation to her disciplinary hearing, she was "singled out" to be denied the benefits of

8

After reviewing Schoppe's evidence in the light most favorable to her, we conclude that her evidence does not show that male employees who engaged in similar acts were not punished similarly, and thus she has failed to make out a prima facie case or show pretext (that her gender was a determinative factor in her termination).

According to TDCJ, Schoppe was terminated for violating TDCJ Rule 21 prohibiting harassment. Rule 21 prohibits "all forms of harassment or discrimination relating to sex, gender, race . . . or disability." A Rule 21 infraction is considered a "level 2" violation. TDCJ's EEO investigation concluded that Schoppe violated Rule 21 in three ways: (1) based on sex -- she created an intimidating, hostile work environment due to remarks she made to various staff members regarding alleged sexual misconduct of other co-workers, (2) based on race -- on more than one occasion Schoppe made inappropriate racially-oriented comments that were offensive to others, and (3) based on  disability -- Schoppe engaged in conversation that addressed a perceived disability of

---

gathering information in support of her defense, talking to witnesses, and presenting witnesses at the hearing. Schoppe apparently believes that this treatment was based on her gender. However, Schoppe presents no evidence that anyone else, male or female, was provided any greater benefits at a disciplinary hearing than those provided to her. Unsubstantiated assertions are not competent summary judgment evidence. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994).

9

another employee.[3]  Schoppe's termination exceeded the general TDCJ guidelines for a level 2 offense.  For a first violation of a level 2 offense the "range of disciplinary actions" includes probation, suspension, reduction, and demotion.  However, a note below these possibilities states "[t]he Reprimanding Authority may, if the circumstances warrant and documentation is deemed sufficient, recommend dismissal at any step for the above offenses."  TDCJ believed that termination was justified, among other reasons, because of Schoppe's supervisory position.

In response, Schoppe claims that she was treated more harshly than several men who she alleges engaged in similar conduct -- namely John Sims, John Wisener, and Jesse Brown.  John Sims,[4] a corrections officer, was found to have violated Rule 24c and 25c by the use of excessive force on an inmate without provocation and failure to report completely or accurately such use of excessive force.  As a result, Sims received nine months

---

[3]Presumably this infraction refers to either Schoppe's unwelcome conversations concerning Kendrick's emotional state following an attempted rape or Cook's possible bulimia.

[4]There is some confusion over who, exactly, John Sims is; in her deposition Schoppe refers to Dr. John Simms, a psychiatrist, but in the summary judgment evidence Schoppe offers evidence of John Sims, a corrections officer.  Dr. John Simms was accused of sexual harassment but the allegations were never sustained. Therefore there is no comparison of disparate treatment to be made.  Possibly because of the confusion, the district court considered only the evidence on Dr. John Simms but not Corrections Officer John Sims.  However, because there is summary judgment evidence in the record on Corrections Officer John Sims that was before the district court, we will consider the evidence.

10

of probation and ten days of suspension, punishments which fall within TDCJ's guidelines for a level 2 violation. While Schoppe and Sims were both found to have committed level 2 violations, the work-rule violated was not the same, and Sims's misconduct cannot be said to be "nearly identical" to that for which Schoppe was terminated.

Next, Schoppe offers Captain John Wisener as a comparison. Wisener was found to have violated Rule 5 for gross negligence in duty performance in failing to take steps to prevent serious injury to an inmate during a hostage incident. He was demoted and given nine months of probation, punishment within the guidelines for this level 2 offense. Again, while like Schoppe Wisener committed a level 2 violation, the work-rule violated was not the same and his misconduct cannot be said to be "nearly identical" to that of Schoppe's.

Finally, Schoppe offers Jesse Brown for comparison. In October 1991, an investigation was conducted concerning an allegation of sexual harassment against Brown. Brown was given two months probation for violating Rule 37 after it was determined that his conduct had not met the criteria for sexual harassment. This rule infraction constitutes a level 4 violation and the resulting punishment was within the guidelines for this level of offense. Since this incident involved a different rule violation and a lower level offense and Brown's conduct was not

11

"nearly identical" to that of Schoppe, it is not a valid comparison.

In January of 1993, Brown was found to have violated Rule 21 prohibiting sexual harassment for making sexual verbal comments to another employee and was given twelve months of probation and twenty-one days of suspension; these punishments fall within the guidelines provided for a second offense under the level 2 guidelines. This case is the only comparison of the same rule violation that Schoppe offers. While Brown was found to have violated the same work-rule as Schoppe, their conduct was not "nearly identical." Brown's misconduct concerned only sexual harassment of one employee while Schoppe's offense concerned three different types of harassment and involved three different employees. We find that Brown fails as a valid comparison to establish disparate treatment.

We conclude that the evidence offered does not support the contention that female employees are treated dissimilarly from male employees with respect to TDCJ's Rule 21. Schoppe was punished differently from one male employee involved in Rule 21 infraction (Brown). However, the conduct of Brown and Schoppe was not so similar that TDCJ was required to treat the two equally. Therefore, Schoppe has failed to make out a prima facie case of gender discrimination. We also conclude that Schoppe, in her effort to show pretext, has failed to offer sufficient evidence to allow a rational factfinder to make a reasonable

12

inference that her gender was a determinative reason for her termination.  We affirm the district court's holding that Schoppe's claim under the TCHRA fails.[5]

## B.  § 1983 Claim

Schoppe claims that the district court erred in holding that there was no genuine issue of material fact regarding the merits of her equal protection claim under the Fourteenth Amendment to the United States Constitution.  She contends that Collins discriminated against her because she is female.  This claim is brought under § 1983 on the allegation that Collins, acting under color of state law, upheld her termination even in light of evidence that she was being singled out for discipline because of her gender, thus making him liable, in his official capacity, for the discriminatory acts as if he had made the initial decision. "Section 1983 actions challenging [gender] discrimination under the equal protection clause and Title VII disparate treatement cases both require a showing of discriminatory motive, and the nature of a <u>prima facie</u> showing is the same in either case." <u>Lee v. Conecuh County Bd. of Educ.</u>, 634 F.2d 959, 962 (5th Cir. 1981). Based on the discussion above concerning a failure of Schoppe to

_____

[5]Schoppe asserts that the district court committed reversible error because it erroneously considered evidence of Schoppe's supervisory position and made an incorrect conclusion that she violated three different policies in concluding that she could not establish her <u>prima facie</u> case.  Assuming without deciding that the district court incorrectly considered these factors, it is irrelevant because we reach the same conclusion without considering the factors.

13

establish a claim under the TCHRA (which is identical to Title VII for this purpose), we affirm the district court's grant of summary judgment on Schoppe's § 1983 claim.[6]

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on Schoppe's claims under TCHRA and § 1983.

---

[6]In its first order, the district court dismissed Schoppe's § 1983 claim in part based on Jackson v. City of Atlanta, 73 F.3d 60 (5th Cir.), cert. denied, 117 S. Ct. 70 (1996), because she failed to raise a claim grounded on facts different from those raised in her Title VII claim.  In its second order, the district court clarified that Schoppe's claim under § 1983 was dismissed because she failed to make a prima facie case of disparate treatment or show discriminatory intent.  Collins urges Jackson as a basis for affirming the district court's dismissal of the § 1983 claim.  Because we affirm the district court's dismissal on other grounds, we need not address the merits of this argument.